**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 03 2013, 5:49 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRIAN R. GATES**
**BRIAN M. KUBICK**
Jones Obenchain, LLP
South Bend, Indiana

ATTORNEY FOR APPELLEE:

**MARK S. LENYO**
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| YULANDA C. PETTY | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1301-DR-11 |
| | ) | |
| | ) | |
| JOHN T. PETTY | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jenny Pitts Manier, Judge
Cause No. 71D06-0202-DR-74

**September 3, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

This appeal arises from contempt proceedings in the St. Joseph Superior Court. John Petty ("Husband") requested that the trial court hold Yulanda Petty ("Wife") in contempt for failing to pay her proportionate share of their daughter's ("Daughter") college expenses. The trial court declined to hold Wife in contempt but awarded a judgment in favor of Husband after calculating Wife's share of the college expenses.

Wife appeals and raises three issues, which we consolidate and restate as the following two:

I. Whether the trial court properly heard evidence at the show cause hearing concerning the amount of accumulated college expenses; and,

II. Whether the trial court's calculation of Wife's proportionate share of the college expenses is supported by the evidence.

We affirm in part, reverse in part and remand for proceedings consistent with this opinion.

**Facts and Procedural History**

Husband and Wife's marriage was dissolved on March 9, 2004. Several issues resulting from the dissolution were resolved in the parties' property settlement agreement. The agreement contains the following provision pertinent to this appeal:

> The parents agree that [] they shall each pay a proportionate share of all education expenses for said children, including high school and college education, which expenses include room and board, tuition, books, supplies, school-sponsored activities, transportation (where appropriate), and reasonable weekly expenses after applying all scholarships, loans, grants, and contributions (child's assets, including the current trust accounts now set aside for each of the children, savings, gifts, earnings from employment) that any child is able to provide for his or her own education. *The parents' agree that any money currently set aside for the children's education shall first be utilized before the application of this provision* [the "Trust Account"]. The parents also agree to be jointly named on the children's

2

current bank accounts and/or trust accounts along with the children. Proportionate share is defined as the Husband's percentage of gross income as compared to the Wife's gross income, reflected on Exhibit "B".

     If a child elects to attend college, the parents agree to limit their portion of the child's college expenses . . . to an education institution operated by the state of Indiana, or the equivalent of such educational expenses as would be incurred by such child at Indiana University in Bloomington, Indiana, if such child chooses to attend a post-high school education institution not operated by the state of Indiana. . . .

Appellant's App. pp. 18-19 (emphasis added). The Trust Account is a Wachovia Securities trust account established with funds provided by Daughter's grandparents who gave her monetary gifts at Christmas for her future college education. The Trust Account was established prior to the parties' divorce.

In 2006, the parties' Daughter enrolled at Purdue University where she completed a six-year pharmaceutical program. Wife, Husband, and Daughter never collectively discussed payment of Daughter's college expenses. Daughter discussed the expenses only with Husband, who deposited money into Daughter's PNC bank account periodically when Daughter requested funds. Husband paid the entirety of Daughter's college expenses with either his personal funds or from the proceeds from investments in the Trust Account. Husband did not seek reimbursement from Wife for Daughter's college expenses until he initiated the proceedings at issue in this appeal.

However, on December 22, 2011, Husband filed a Rule to Show Cause in which he alleged that Wife failed to pay her proportionate share of Daughter's college expenses, contrary to the terms of their dissolution settlement agreement.[1] A hearing was held in

---

[1] Husband raised two additional issues in his Rule to Show Cause concerning the tax consequences of Wife's failure to claim spousal maintenance payments in the amount of $9000 per month as gross income on her federal tax return and additional tax issues surrounding a line of credit Husband paid off pursuant

this matter on October 23, 2012. At the hearing, the parties stipulated that Wife's proportionate share of the college expenses was 18%. But Wife disputed the amount that Husband alleged he contributed to Daughter's education and argued that Husband's contributions included expenditures for non-educational related purposes such as Daughter's personal shopping and vacations. Wife also challenged the Trust Account balance claimed by Husband as of the date that Daughter enrolled at Purdue. Specifically, Wife argued that the Trust Account must have had a higher balance than Husband claimed at the hearing, and therefore, her proportionate share of Daughter's college expenses should be less than the amount alleged by Husband.

On December 13, 2012, the trial court issued its judgment. After accepting Husband's claim that the balance in the trust account available for Daughter's education was approximately $77,000 and subtracting that amount from Daughter's total college expenses, the trial court concluded that Husband had personally contributed $103,566.73 to Daughter's college expenses. Therefore, the trial court calculated Wife's proportional share and concluded that Wife's share of the expense equaled $18,642.01. After subtracting $5,000 from that amount due to the division of a marital asset for which Wife had not yet received her 50% share, the court ordered Wife to pay Husband $13,642.01 within thirty days from the date of the order. The trial court did not hold Wife in contempt and did not order her to pay interest on the judgment because it found that

_____

to the parties' Settlement Agreement. Neither party has challenged the trial court's resolution of those issues in this appeal.

4

Husband had not sought reimbursement for Daughter's college expenses prior to filing his Rule to Show Cause. Wife now appeals.

## I. Scope of the Proceedings

Wife first argues that the trial court "went beyond the proper scope of the [contempt] proceedings" when the court considered evidence and determined the total cost of Daughter's college education. Appellant's Br. at 9. Wife contends the only issue properly before the court was whether Wife willfully disobeyed a court order.

"In general, contempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity." City of Gary v. Major, 822 N.E.2d 165, 169 (Ind. 2005). Indirect civil contempt is a willful violation of a court order intended to benefit an aggrieved party that takes place outside the trial court's presence. See In re Paternity of M.F., 956 N.E.2d 1157, 1163 (Ind. Ct. App. 2011).

In contempt cases the alleged contemnor must be given notice of the alleged contemptuous acts such that he or she has adequate time to prepare a defense. Showalter v. Brubaker, 650 N.E.2d 693, 701 (Ind. Ct. App. 1995). "Failure to give such notice results in prejudice to the defendant." Id. However, parties may impliedly consent to trial of an unpled issue where both parties litigate the new issue during the proceedings. Columbia Club, Inc. v. American Fletcher Realty Corp., 720 N.E.2d 411, 423 (Ind. Ct. App. 1999), trans. denied.

Husband's Rule to Show Cause alleged that Wife disobeyed the trial court's decree by failing to pay her proportionate share of Daughter's college expenses. Further, Husband alleged that Wife's share of the college expenses totaled $20,070. Appellant's

5

App. pp. 51, 53. Therefore, Wife was put on notice that the total amount of Daughter's college expenses was at issue. But even if that notice was deficient, Wife was clearly prepared to challenge Husband's calculation of Daughter's college expenses at the hearing, and both parties litigated the issue.

The parties both presented testimony and exhibits concerning the total cost of their Daughter's pharmaceutical degree. Daughter also testified. Wife agreed that her proportional share of Daughter's college expenses was 18%. The disagreement between the parties was whether Husband was seeking reimbursement for expenses not directly related to education such as Daughter's clothing purchases and spring break trips.

Wife testified that a "reasonable approximation" of Daughter's college expenses was $125,000. Tr. p. 116. Wife also stated that she would be "willing to agree to 125,000 [sic] based on the evidence." Tr. pp. 119-20. Wife further requested that the court reduce $125,000 by the amount in Trust Account on the date Daughter enrolled at Purdue, per the terms of the parties' settlement agreement, and then order her to pay 18% of that amount. Tr. p. 121.

Finally, in her brief, Wife states that she was "amenable to having the hearing resolve" the issues between the parties but only if Husband and the court agreed that $125,000 was a reasonable estimate of Daughter's college expenses. Appellant's Br. at 14. Wife presented her own evidence and argument concerning a reasonable amount of college expenses; therefore, even if Husband's Rule to Show Cause did not explicitly notify Wife that she should be prepared to litigate the aggregate college expense at the hearing, Wife acquiesced to litigation of that issue.

## II. Sufficient Evidence to Support the Judgment

Wife next argues that the trial court's calculation of Daughter's college expenses is not supported by the evidence. The trial court entered findings of fact and conclusions of law sua sponte. Our standard of review under this circumstance is well settled: specific findings control only as to issues they cover, and a general judgment standard applies to any issues upon which the trial court has not made findings. Jewell v. City of Indianapolis, 950 N.E.2d 773, 776 (Ind. Ct. App. 2011). We review specific findings by determining whether the evidence supports the findings and whether the findings support the judgment. Id. We will reverse only when the judgment is shown to be clearly erroneous, i.e ., when it is unsupported by the findings of fact and conclusions entered thereon, or when the trial court applies an incorrect legal standard. Id.; Fraley v. Minger, 829 N.E.2d 476, 482 (Ind. 2005). We defer substantially to the trial court's findings of fact, but we evaluate conclusions of law de novo. Jewell, 950 N.E.2d at 777.

The trial court found that Husband established a PNC bank account for Daughter he funded personally from which her college expenses were paid. Deposits were made into the PNC account with funds transferred from the Trust Account established by Daughter's grandparents and from Husband's personal funds. The trial court also found that Husband deposited a total of $116,349 of his own personal funds into the account. However, the trial court reduced this amount by $12,782.27, which was the balance remaining in *Daughter's trust account* but not applied toward her college expenses contrary to the terms of the parties' settlement agreement. Therefore, the trial court

7

calculated Wife's portion of Daughter's college expenses as 18% of $103,566.73 or $18,642.01.

At the hearing, Wife argued that the funds expended by Husband were not solely for educational expenses, but for clothing, gifts, and vacations. Wife argued that she was not required to pay a share of those expenses per the terms of the parties' agreement. Wife contends that Husband voluntarily assumed certain non-education related expenses, and cannot now pass those expenses on to her.

The trial court entered the following findings of fact and conclusions to support its calculation of Daughter's college expenses:

> The parties' Daughter [] has enjoyed the benefits of not only the love and support of her parents, but of their financial largess. During her pursuit of a degree in pharmacy studies at Purdue, in addition to having tuition, books and fees paid for, [Daughter] was afforded generosity with respect to her living expenses, including rent, food, clothing, gift giving at the holidays, etc. by the way in which [Husband] met his obligation to support her post-secondary educational needs. [Husband] applied certain trust funds to [Daughter's] expenses as the [parties' agreement] contemplated, and then met all other expenses of [Daughter's] that he felt reasonable, which, it would appear, included all of her expenses. [Husband's] total expenditures after application of the trust assets, total $116,349.00.
>
> ***
>
> [Wife] argues that not all of [Husband's] expenditures for [Daughter] were necessarily or strictly "college educational expenses." Yet, at the evidentiary hearing, [Wife] smiled in amusement as counsel reviewed [Daughter's] various expenditures, all of which seem within the purview of the standard of living and way of living, as a college student, that the parties established for their [Daughter]. [Wife] seemed to take loving pleasure in the picture of the well-cared for child, comfortably inhabiting the life her parents created and wished for her, while pursuing a significant degree at a fine academic institution and growing to healthy, confident maturity. There is nothing in the evidence that suggests that the expenses advanced by [Husband] to pay [Daughter's] education and living expenses

were outside those contemplated by the parties for their [Daughter] and in which they both should share.

Appellant's App. pp. 10-11.

Husband admitted that he was aware that Daughter used funds in the bank account to pay for certain items not directly related to her college expenses, but because Daughter was in school, he believed it was his and Wife's responsibility to pay for those expenses. Tr. p. 85. In its findings and conclusions, the trial court found that those expenditures were common to the lifestyle Daughter enjoyed before college and there was no evidence to suggest that the parties' wanted to curtail her standard of living in college. The trial court specifically found that Wife's testimony and demeanor at the hearing was evidence that she wanted Daughter to continue to enjoy that standard of living while at college. In addition, the parties' agreement provides that the parties would pay Daughter's "reasonable weekly expenses" while she attended college. Appellant's App. p. 18.

Under the facts and circumstances before it, the trial court did not abuse its discretion by concluding that Daughter's "reasonable weekly expenses" included expenses for clothing, gifts and travel. See Johnson v. Johnson, 920 N.E.2d 253, 256 (Ind. 2010) (stating that courts interpret parties' settlement agreements using ordinary contract principles and "the goal of the courts in interpreting a settlement agreement is to ascertain and give effect to the parties' intent"). Although some of these expenses might not be objectively considered "reasonable weekly expenses", the parties' and their Daughter's standard of living before college leads us to conclude that the expenses at issue are reasonable under the unique facts of this case.

Finally, we address Wife's claim that Husband personally contributed less than $116,349 of his personal funds, which is the amount found by the trial court. As we stated above, the parties settlement agreement provided that the parties would pay their proportionate shares of Daughter's college expenses after utilizing the funds in *the trust account established for her education*. The trial court did not specifically find what the balance in the Trust Account was in the Fall of 2006 when Daughter enrolled at Purdue.

There is no evidence in the record that would establish the Trust Account balance on the date that Daughter enrolled at Purdue.[2] The only evidence concerning the Trust Account is 1) a December 2007 statement showing cash additions, cash withdrawals, other withdrawals, and income to the account in the year 2007 and 2) a January 2009 statement establishing a Trust Account balance of $12,782.27 on January 1, 2009. Ex. Vol., Respondent's Exs. F & G. Per the terms of the parties' agreement, Wife's proportionate share of Daughter's college expenses cannot be established without evidence of the Trust Account funds that were available for Daughter's educational expenses when she enrolled at Purdue University.[3]

---

[2] It appears that in its calculations, the trial court agreed with Husband that the balance in the Trust Account was $77,188.47. See Ex. Vol., Exs. F & H. However, as reflected on the 2007 statement submitted at the hearing, that amount was the "net subtractions from cash" from the Trust Account for the year 2007, not the balance in the account.

[3] At the hearing, Husband testified that the first three deposits into Daughter's PNC bank account between July 2006 and December 2007 totaling $47,182.02 could have come from funds in the trust account or from Husband's personal account, but he could not recall with any certainty which account the deposits were from. He also stated that he withdrew Trust Account funds first if there was enough cash in the account for Daughter's use. If the Trust Account's funds were tied up in investments that Husband could not sell, he supplemented Daughter's account with his own funds. See Tr. pp. 56-57. Husband maintained control of the Trust Account until Daughter's twenty-first birthday in 2009.

10

We therefore remand this case to the trial court for the limited purpose of holding a hearing to determine the balance in the Trust Account on the date that Daughter enrolled at Purdue and for the corresponding recalculation of Wife's proportionate share of Daughter's college expenses.

**Conclusion**

The trial court did not exceed its authority when it heard evidence concerning the amount of Daughter's college expenses during the contempt proceedings and adjudicated that issue. Moreover, trial court did not abuse its discretion by concluding that, under the unique circumstances of this case, Daughter's "reasonable weekly expenses" included expenses that were not directly related to tuition and room and board, such as purchases for clothing and travel. However, because Wife's proportional share of Daughter's college expenses cannot be calculated without evidence of the funds that were available in the Trust Account when Daughter enrolled at Purdue, we remand this case to the trial court for a hearing on that issue.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

BAKER, J., and MAY, J., concur.

11